## SPLITDORF ELECTRICAL CO. v. DUBILIER CONDENSER & RADIO CORPORATION (two cases).

District Court, S. D. New York.  April 18, 1928.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds and L. B. Young, both of New York City, of counsel), for plaintiff.

Mayer, Warfield & Watson, of New York City (Lawrence Bristol, William F. Nickel, and W. W. Fraser, all of New York City, of counsel), for defendant.

KNOX, District Judge.  The above-named plaintiff has brought two patent infringement suits against Dubilier Radio & Condenser Corporation.  One is based upon Van Deventer patent, No. 1,181,623, and involves claims 2 to 7, inclusive.  The other has to do with Hatch patent, No. 1,574,424, and relates particularly to claims 5, 6, 7, 8, and 9.  The patent first mentioned is for "an electrical condenser and manner of mounting the same in an ignition dynamo," and the second is for a "condenser" which, in the judgment of Hatch, constituted an improvement over devices of the prior art "wherein a pile of alternate layers of mica and tinfoil are clamped together at their edges."

In Van Deventer's disclosure, he points out that condensers, as previously used for ignition purposes, have been provided with a suitable casing carrying a circuit terminal or terminals, or have been mounted in the armature of the dynamo so as to be pro-tected from mechanical injury.  He calls attention to the fact that casings are expensive, as is the method of mounting condensers in armatures.  Difficulty was also experienced, he says, in securing good contact between leaves of foil in the condenser and the terminals.  If separate terminals were employed, the element of cost called for further consideration.  He sought, therefore, an arrangement in which the insulating medium of the condenser itself should serve as a casing, and in which an easy and cheap method of mounting the circuit terminals directly on the condenser, and in connection with the foil leaves, might be attained.  He planned to clamp the circuit terminals to the condenser plates, and thereby eliminate the necessity of soldering circuit wires to the foil sheets, which is a delicate operation.  He had the further object of lessening the size of the condensers, especially as regards thickness, and of arranging his construction so as to be mountable directly across the terminals of the interrupter mechanism commonly used in ignition dynamos.

He accomplished his purpose by building up a condenser stack of alternate plates, or sheets, of dielectric (mica) and conducting material (tin or aluminum foil), the ends of alternate conducting plates extending beyond the ends of the stack.  When thus assembled, the stack was provided with top and bottom sheets of insulating material "heavier than the center sheets."  The projecting ends of foil were folded over the respective ends of the stack and beneath the heavier outside sheets of insulating material.  The several parts of the stack were then held in assembled, relation by means of metallic end clips which made electrical contact with the foil sheets of opposite polarity.  The clips were provided with projecting ears, and these served as terminals through which the condenser might be connected to the electrical circuit in which it was to be used.

An arrangement, such as has been described, eliminates, if desired, the necessity of perforating the mica sheets of a condenser for the purpose of holding them in close contact with the foil and under pressure, so as to preserve a constancy of electrical capacity.

Of the claims of the Van Deventer patent with respect to which infringement is charged, claims 3 and 7 were described by plaintiff's expert as being typical.  They read:

"3. An electrical condenser comprising layers of insulating material, a plurality of sheets of conducting material, interleaved with said insulating material and having ends projecting therefrom, and clamps surrounding and embracing the ends of said sheets of conductive and insulating materials whereby same are mechanically held together "and electrical contact also made between said conductive material and clamps."

"7. An electrical condenser comprising a bundle of relatively thin insulating and conducting sheets, a pair of relatively thick insulating sheets outside said bundle for stiffening the same, and a pair of clamps surrounding and embracing the ends of said elements and securing all of them to form a condenser, and serving as circuit terminals therefor."

Application for the Van Deventer patent was filed February 15, 1915, and the same was issued May 2, 1916. On October 16, 1920, Hatch applied for protection on the structure covered by patent No. 1,574,424, which issued February 23, 1926. His invention, if such it was, called for an improvement over the type of condenser wherein a pile of alternate layers of mica and tinfoil are clamped together at their edges. In his specification, he stated that:

"It has been customary in the past to build a certain type of condenser, as for example, the type of condenser disclosed by Van Deventer patent 1,181,623, issued May 2, 1916, by alternately piling on top of one another thin films of mica and tinfoil. After a certain predetermined number of layers or films have been compiled so as to give the desired capacity as determined by previous tests on a completed condenser, an identifying slip of paper or other material is slipped in between the top layer and a transparent mica covering film. This slip in addition to other information gives the rated capacity of the condenser. Then terminal clamps are slipped over the edges of the pile and the clamps are squeezed under pressure so as to compact the pile and so as to retain the clamps in position on the pile. The whole is then impregnated and baked in an oven under reduced pressure.

"It has been found however that due to the differences in thickness of the dielectric, and due to slight differences in pressure between the plates, that the capacity of the condenser is sometimes far from the theoretical and desired capacity. Furthermore in use due to the excessive vibration to which condensers of this character are subject when on motor vehicles, the clamps sometimes slip off from the condenser whereupon the condenser generally is expanded and changes in capacity.

"It is an object of this invention to overcome these difficulties and specifically, one object of my invention is to provide a condenser of which the capacity of the completed condenser is known and properly rated."

Further objects were to provide a condenser which is protected at all of its weak exposed points; to provide a terminal clamp for a condenser which cannot be pulled off and thereby destroy the condenser, and to improve the method of building the condenser element. As illustrative of the claims of the Hatch patent, No. 6 is quoted as follows: "An electrical condenser comprising a stack of sheets of conducting and dielectric material, means for holding the stack together after it has been formed to give the desired capacity, including at least one plate of stiff insulating material and a pair of metallic terminal clamps extending over and pressed onto the said stack over said plate, said conducting sheets of opposite polarity being brought out at different sides of the stack and bent over so as to be engaged by said terminal clamps, said insulating plate having means to receive gripping devices and gripping devices on the terminal clamps forced under pressure into said insulating plate receiving means, to hold the clamping terminals from movement in any direction and to assist in drawing the terminal clamps onto the stack."

The means by which Hatch prevented displacement of the end clamps was to provide openings 5 in the protective plate 4 of the condenser stack. The metallic end pieces which clamp the stack are fitted with projections 10 which fit tightly into the openings 5, and thus insure prevention against the ready removal of the clamps. In other words, Hatch locks his clamping members to the stiffener plates of the condenser.

In answer to plaintiff's allegations with reference to the Van Deventer patent, defendant sets up three defenses:

(1) That the patent is anticipated by the prior art, and by prior knowledge and use within the United States;

(2) That the subject-matter set forth in the claims involves no invention; and

(3) That defendant's Micadon condensers "601 Type" do not infringe.

As to the Hatch patent, defendant says that it, too, is invalid for lack of invention; and, if held valid, the same must be limited to the specific means which the inventor disclos-

es for accomplishing the object he had in mind, viz.—in making his end clamps withstand, without impairment to the condenser, the service to which the same may be put.

Taking up the Van Deventer patent, it seems proper to inquire first as to whether any of its claims now before the court are infringed by the "601 Type" of defendant's Micadon condenser.

In making this type of condenser, three sheets of tinfoil, each of which is perforated by a round hole near its center, and having a circular notch cut in one end, are used. One sheet of foil is placed on a stiff cover plate of turbinite perforated by two holes on which a sheet of perforated mica has first been laid, with one end of the foil extending to the left end of the cover plate. The portion of the foil lying on the turbinite is covered with a sheet of mica; and it, in turn, has placed upon it another sheet of foil, the end of which extends outwardly to the right end of the stack now in process of construction. Another piece of mica is then added as before, followed by another sheet of foil placed as was the first, and a third sheet of mica. A cover plate of turbinite is now placed on top of the stack; loosely fitting U clips are pushed over each end of the assembled elements. Metallic eyelets, which reach from top to bottom of the stack, are now inserted through the perforations of the cover plates. One of these passes through the circular space cut in the ends of the foil sheets, and the other makes contact with the foil and gives the condenser opposite polarity. The projecting heads of the eyelets are turned with a hand tool or press, so as to tightly grasp the cover plates of the stack, and apply adequate pressure to the condenser elements. The structure is then immersed in hot wax pumped under vacuum. After being put through this process, the condenser is cleaned and tested for voltage and capacity. It is then ready for use. Under some constructions, defendant places terminal ears of various designs upon the condenser. For the most part these ears consist of pieces of metal which are fastened between the end clamps of the condenser and the head of the binding rivets, and extend outwardly from the stack in such way as to admit of their installation in conjunction with the proper connection in the circuit in which the condenser is to be used.

From what has been said, it will be seen that defendant's construction may easily be read upon the claim of Van Deventer, hereinbefore quoted. Defendant's effort to distinguish its condensers, so as to avoid infringement, cannot succeed. The chief difference between Van Deventer's condensers and defendant's 601 Micadon type of device is to be found in the eyelets which pass through the stack and bind together the end members of the condenser. These eyelets provide tension to the end clamps and through them, and the outside plates of insulating material, put pressure upon the condenser stack. There is a difference, too, in the provision that the contending parties have made for mounting their condenser in position for use. The plaintiff so cuts his clamping members as to furnish a bent out integral ear which serves as a means of attachment. Dubilier, while he uses a separate extension member, secures the same to the end pieces of his condenser through the instrumentality of the eyelet. For practical purposes, therefore, it may properly be said to be integral with the end elements.

It is a fact, as defendant points out, that one of Van Deventer's purposes was to construct a condenser which would not require the perforation of the elements of his condenser stack, and each of the devices manufactured under the patent avoids such perforation. Nevertheless, none of the claims in suit is limited to an unperforated stack; and I do not think that such limitation should be read into them. It is also a fact that defendant's end clips are in contact with the foil sheets through the medium of the connecting tubular eyelets. As a result, the condenser will operate, even though the end clips should be cut in two. This, however, should not be regarded as a basically differentiating feature, inasmuch as the end pieces are not intended to be cut, and the manner of their adjustment will overcome any possible failure of the tubular rivets to make contact with the foils.

Much was said at the trial as to the necessity of the stack being under a constant mechanical pressure in order that its capacity may be maintained. Within limits, this is no doubt true. At the same time, it is to be observed that neither litigant is content to rely upon mechanical pressure alone. Each of them subjects its condenser stack to a wax or varnish bath which excludes air and moisture from between the layers of foil and dielectric, and causes them to adhere closely together. With the addition to a stack thus treated of two outside strips of insulating material, which are snugly bound together by any suitable mechanical means, the problem of constancy of pressure, so far as radio condensers are concerned, is neatly and completely

748

solved. For this reason, I have come to believe that a great deal of the testimony of the experts, having to do with the relative degrees of pressure resulting from the employment of the respective means by which the contending parties place their stacks under pressure, is of a somewhat academic character.

Infringement of the claims in suit of the Van Deventer patent being found, their validity must be considered.

And first, as to claim 3. As originally proposed by Van Deventer, the end clamps were specified as "engaging" the ends of the sheets of conducting and insulating materials. The Patent Office rejected the claims upon Browne patent, No. 151,004. That disclosure showed a condenser with its constituent elements held together by two binding screws, one near each end of the stack, and extending through the same. The screws would permit of the replacement of a ruptured element in the condenser. Upon the rejection, Van Deventer amended the claim to provide that the end clamps should *surround and embrace* the ends of the conductive and insulating material, rather than engage the same, and the claim was allowed as hereinbefore set forth. The method by which the end clamps grasp the stack is the feature which distinguishes the claim from the cited prior art. It seems, however, that this characteristic of claim 3 was not altogether new, but, even though it was so regarded by the Patent Office, that view should not, by reason of what is about to be said, be considered of great weight. For some reason, British patent to Fletcher, No. 2434, dated April 27, 1911, was not before the Patent Examiners. It, like the device described by the patent in suit, was intended, primarily, for use in an ignition system. The demand for condensers of small size and capacity for radio use had not yet come into existence. In considering the bearing of prior art on the patent in suit, this fact must be borne in mind. For, when all is said, the success of Van Deventer's patent is largely due to the manner in which its structure has been adapted to present day radio use. Notwithstanding, the condenser art is relatively old, and many are the persons whose ingenuity has been employed in meeting the demands created by advances in the electrical art. Now, Fletcher bound his condenser with clips placed at opposite ends of his stack, and that stack, in its essentials, was built in much the same manner as that followed by Van Deventer. He then secured one end of his device to its housing by a screw *9* which passed through an ear *10* turned up out of clip *2*, which clip was in electrical connection with one side of the condenser. That side of the condenser was connected to earth by screw *9*. At the opposite of the end of the stack, a forked ear *11* was formed out of clip *3* (connected with the other side of the condenser) and embraced the inner end of a rod *12* immediately behind its head *13*. So far as can be ascertained from the drawings, Fletcher's end pieces surrounded and embraced the ends of the sheets of conductive and insulating material whereby the same were mechanically held together, and electrical contact was made between the conductive material and the clamps.

It is true, as plaintiff says, that the Fletcher condenser has no stiff plates of insulating material at opposite sides of the stack, and within the clips or clamping members. It is provided with such plates without the clips, and in making the plates integral with the stack, Van Deventer undoubtedly did something of advantage. He did not, however, include this improvement within the terms of claim 3. Let it be assumed that Fletcher's patent, through a lack of more definite specifications of his accomplishment, should not be regarded a complete anticipation of claim 3; his disclosure should, nevertheless, be regarded as having a distinct bearing upon the question of patentability shown by this claim. Particularly, is this true when consideration is given to the Eiseman condenser of 1912. These were in use in the ignition system of Packard automobiles from 1912 to 1916. This fact is definitely established by the witnesses Schmidt and Fuegel, who were employed by the Eiseman Company, and is corroborated, in part at least, by Libby, plaintiff's expert, who admitted having seen one of the Eiseman condensers in the coil box of a Packard truck. In this device, there can be no doubt but that the end clips, which had a clamping effect, surrounded and embraced the ends of the stack elements in the same fashion as is disclosed by Van Deventer. The end clips also served to place the condenser in electrical circuit through being pressed against brass springs by a cover plate on the automobile coil box. Were the Eiseman condensers here alleged to infringe claim 3 of the Van Deventer patent, a holding of such infringement would be compulsory.

With this state of the art, there is little hesitancy in declaring that there was no invention disclosed by claim 3 of the Van Deventer patent. The same may be said of claim 2. Claim 4 differs in substance from the preceding claims to the extent that it calls for apertured connecting ears projecting from the end clamps which embrace all the elements

of the condenser case or stack. In view of the ears shown by Fletcher, there is no patentable novelty in the adding such ears to the clamping members. Claim 5 of Van Deventer calls for clamps which form means "whereby said case may be wholly supported as well as connected in circuit." This, it will be seen, is nothing more than a broader statement than is covered by claim 4, and, for a similar reason, it will be held invalid.

Claims 6 and 7, to my mind, show invention, and should be held valid. Each of them calls for something that is not to be found in the prior art, in the form conceived by Van Deventer, and that is the inclusion within the unitary structure of his condenser of one or more stiffener plates. The plates, gripped as they are by the end clamps, bind the structure together, and furnish whatever mechanical pressure is required in order to maintain the electrical capacity of the condenser. In addition, their use overcomes the need of a fair degree of care and delicacy in handling the condenser. This feature, considering the inquisitive nature of the amateur radio enthusiast, is of no mean importance. Hundreds of thousands of the condensers covered by claims 6 and 7, and particularly the latter, have been sold. Several licensees have recognized the validity of the claims, and the use of the general type of condenser covered by claim 7 must, in view of the evidence, be recognized as standard practice in radio receiving sets. Upon these facts, the claims should be recognized as showing patentable invention, and be held valid.

Coming now to the Hatch patent, it must be observed that whatever is to be said with respect to the patentee's inventive thought, with respect to its method of fastening his clamping devices to the stiffener plates of a condenser, the means by which he does it must be given a narrow scope. All that he shows in the way of serving his purpose in this direction was to place openings 5 in the stiffener plates of the Van Deventer structure, and to equip the latter's end pieces with projections which, when fitted into the stiffener plate openings, would place the stack under a pressure greater than that provided by Van Deventer, and would, in addition, prevent the removal of the end pieces. Granting that these features of Hatch are desirable and advantageous, they are advances only in the degree of pressure applied to a stack, and in the strength of the terminals to resist removal. The condenser art, as well as those of analogous character, contain numerous examples of means by which a given metal clamp may be made to subject a given object to pressure, and at the same time be rendered difficult of removal. While the gripping of a condenser stack under the teachings of the Hatch patent is supposed to insure a greater constancy of electrical capacity than is obtainable by following Van Deventer, the importance of pressure in condensers of the present type, over and above that accomplished by Van Deventer, as previously suggested, has been exaggerated.

Clamping devices of the prior art, particularly as shown by British patent to Siemen, No. 23,821, are so close to the means of the patent in suit, and common knowledge of effective means of applying pressure to a gripped member through the medium of a nonremoval clamp is so extensive, as to lead me to believe that defendant's condensers should not be held to infringe the Hatch patent in suit. They should, I think, be restricted to the specific means which the patentee shows as capable of accomplishing the objects he had in mind.

A decree in accordance with the foregoing opinion may be submitted.